# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18CR410 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| DONTAE FROST, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is Defendant Dontae Frost's Motion for Compassionate Release. (Doc. 41). For the following reasons, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

On July 24, 2018, a Grand Jury indicted Defendant with one count of Possession with Intent to Distribute a Controlled Substance, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

On March 21, 2019, Defendant executed a Plea Agreement and pleaded guilty. In the Plea Agreement, the parties agreed to a specific sentence of 60 months imprisonment. On July 11, 2019, the Court adopted the parties' agreement and imposed a sentence of 60 months imprisonment with 3-years supervised release. Defendant is currently serving his imprisonment at Elkton Federal Correctional Institution.

On May 14, 2020, Defendant filed his Motion. (Doc. 41). Defendant claims he is entitled to relief because the presence of COVID-19 presents extraordinary and compelling

circumstances justifying a sentencing modification. (*Id.*). On June 11, 2020, the Government filed its opposition. (Doc. 42).

## II. LAW & ANALYSIS

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, in certain circumstances, a defendant may ask the court to modify a sentence, otherwise known as "compassionate release." *Id.* at § 3582(c)(1)(A). Before doing so however, a defendant must exhaust his administrative remedies. *Id.*; *United States v. Alam*, --- F.3d ----, 2020 WL 2845694 (6th Cir. June 2, 2020).

After a defendant has exhausted his administrative remedies, he may ask the court for compassionate release. A defendant is entitled to compassionate release if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission." § 3582(c)(1)(A)(i).[1]

That applicable policy statement is outlined in § 1B1.13 of the Sentencing Guidelines. There, the Commission lists 'extraordinary and compelling reasons' as relating to a defendant's medical condition, age or family circumstance. U.S.S.G. § 1B1.13, n. 1. There is also a 'catch-all' provision for extraordinary reasons outside those listed. *Id.* However, before a court looks at the 'extraordinary and compelling reasons' supporting defendant's release, the court must first determine that defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). *Id.* at § 1B1.13(2).

Section 3142(g) list four factors for the courts to consider whether a defendant poses a danger to the community. Those factors include: (1) the nature and circumstances of the offense;

---

[1] There is a second scenario that entitles a defendant relief based on his or her age, but that section is not applicable to Defendant. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

(2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g)(1)–(4).

Here, Defendant contends he exhausted his administrative remedies. (Doc. 41, PageID: 170).[2] Even if Defendant did, the Government argues Defendant presents a danger to the community. (Doc. 42, PageID: 191). "The defendant has the burden to show he is entitled to a sentence reduction" under § 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020). Defendant argues he presents "no public safety factors" and that he "commits to a law-abiding life away from crime and dedicated to his family." (Doc. 41, PageID: 172). But because Defendant failed to develop these arguments beyond their mere recitation, Defendant's Motion fails.

Section 3142(g)(1) mandates that the court consider the nature and circumstances of the offenses charged, including offenses involving controlled substances. 18 U.S.C. § 3142(g)(1). Here, Defendant pleaded guilty to a crime involving controlled substances. Thus, by Congressional decree, the inherent nature of the offense indicates a strong threat to society. *United States v. Stone*, 608 F.3d 939, 947 n. 6 (6th Cir. 2010) (in the pretrial detention context, citing Sixth Circuit precedents affirming, on dangerousness grounds, the detention of run-of-the-mill drug dealers, even without an indication that the defendant has engaged in violence). This factor favors continued detention.

Likewise, the weight of the evidence against Defendant reflects his danger to the community. Section 3142(g)'s second factor goes to the weight of the evidence of Defendant's

---

[2] The Government argues that it is not clear whether Defendant exhausted his administrative remedies. (Doc. 42, PageID: 182). According to the Government, Defendant should have attached evidence of his administrative filings to his Motion. While the Court agrees with the Government in principle, the Court gives Defendant the benefit of the doubt and will address the merits of Defendant's claim.

- 3 -

dangerousness. *Stone*, 608 F.3d at 948. As the Government discusses, Defendant participated in drug trafficking conspiracy, albeit as a minor participant. He agreed that he possessed narcotics, drug paraphernalia, drug trafficking tools and a large amount of cash. Since Defendant points to no contrary evidence, § 3142(g)'s second factor favors continued detention.

Next, the Court considers the history and characteristics of Defendant, particularly:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A)–(B).

Defendant is a relatively young man at 38 years old. He appears to have family support. However, he has a poor employment record. And while he alleges his health is poor and he requires chronic care in prison, he does not substantiate his claim. In fact, he reported his physical condition as "good" to Pretrial Services last year in June of 2019.

Most damaging to Defendant's claim however, is his criminal history. Defendant has an extensive criminal history beginning at the age of 12. Since then, Defendant has multiple convictions involving drugs and drug trafficking. He has numerous parole violations and was on probation when he committed the offense in this case. These convictions earned him the designation as a career-offender according to Pretrial Services. However, Defendant caught a break by agreeing to a term of imprisonment of 60 months.

Therefore, Defendant's history, especially his criminal history, weigh in favor of continued detention.

So does the fourth factor. Section 3142(g)(4) requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Defendant here participated in a large drug conspiracy to distribute narcotics throughout the community. While Defendant was a minor participant in the conspiracy, he still exacerbated the drug problem in the community. Moreover, Defendant's past behavior reflects that he is quick to return to crime even after serving time in prison. All these considerations reflect the danger Defendant presents to the public.

After weighing the § 3142(g) factors, the Court finds Defendant a danger to the community. The Court cannot mitigate that danger by releasing Defendant into home confinement. Accordingly, Defendant's request for a sentence modification is without merit.

The Court agrees that the presence of COVID-19 in our community is 'extraordinary' in the normal sense of the word. And the Court acknowledges that conditions in prisons are not ideal for limiting the spread of the virus. But a wide-scale release of inmates is not the right solution, especially when those inmates present a danger to the public.

The Bureau of Prisons is working to limit the impact of COVID-19 at FCI Elkton. Whether through its own policies or court orders, the Bureau is releasing vulnerable inmates and lessening overall population in the facility. The Court has no reasons to believe that the Bureau has anything but the best intentions to keep the inmate population safe. *See also Raia*, 954 F.3d at 597 (anticipating the Bureau will properly utilize its statutory authorities to manage the COVID-19 crisis).

### III. CONCLUSION

At Defendant's Sentencing, the Court imposed a Sentence that reflected the seriousness of the offense; provided adequate deterrence to others; protected the public; provided Defendant

with the resources he needed to better himself; and reflected the agreement of the parties. Defendant appears to have taken advantage of prison programs to better himself while incarcerated. However, a sentencing modification at this time, especially considering the "break" Defendant received in accordance with his Plea Agreement, is insufficient considering Defendant's crimes and criminal history. The presence of COVID-19 in the facility and Defendant's unknown medical conditions do not justify Defendant's release. After considering these facts, the § 3553(a) factors and the danger Defendant presents to the public, the Court **DENIES** Defendant's Request for Compassionate Release. (Doc. 41).

**IT IS SO ORDERED.**

                                                    s/ Christopher A. Boyko
                                                    **CHRISTOPHER A. BOYKO**
                                                    **Senior United States District Judge**

**Dated: June 19, 2020**